Gillig, Mott & Co. *v.* Independent Gold and Silver Mining Co.

GILLIG, MOTT & CO., Respondents, *v.* INDEPENDENT GOLD AND SILVER MINING CO. (a corporation), Appellant.

Service of summons on a corporation may be made by serving a copy of the same on the Secretary of the company.

The law of 1862, directing the mode of service on certain *companies,* does not repeal or alter the mode of serving corporations.

Companies being broad enough to include corporations, it might be proper to serve a corporation under either law.

A jurat in this form is good: "Sworn to and subscribed before me.   *   *   * A. B., Clerk; by C. D., Deputy Clerk."

APPEAL from the First Judicial District, State of Nevada, Storey County.

The facts are stated in the opinion.

*Williams & Bixler,* Counsel for Appellant.

*W. S. Wood,* Counsel for Respondents.

Points made by Appellant:

*First*—There was no legal service of summons.

*Second*—The proof of service was defective, because the affidavit of service was taken before a Deputy Clerk, not in his own name, but in that of his principal.

Memorandum of Appellant's authorities:

## POINT I.

The act of the Clerk in entering a judgment by default is merely ministerial, and his authority is strictly construed. (*Stearns* v. *Aguirre,* 7 Cal. 449.)

## POINT II.

Wherever the record shows that the defendant was not regularly served with process, the judgment will be reversed. (*Joyce* v. *Joyce,* 5 Cal. 449; *Dorento* v. *Sullivan,* 7 Cal. 279.)

## POINT III.

The mode of service prescribed by the statute differing from that of the common law, the statute must be strictly complied

with to give the Court jurisdiction. (*Jordan* v. *Gibben*, 12 Cal. 102; Angel & Ames, Corp., chap. 18, sec. 3—Title Process, etc.; *Act relating to the manner of commencing civil action*, Laws of 1862, p. 120.) And this the affidavit must affirmatively show. (*McMillan* v. *Reynolds*, 11 Cal. 372.)

### · POINT IV.

The affidavit should have been taken by the Deputy personally, or by the Clerk personally; this being an act requiring the presence of the officer in fact, and not by construction. (*Act authorizing ministerial officers to appoint deputies*, Laws 1864, p. 143; *Touchard* v. *Crow*, 20 Cal. 157–8.)

Points of Respondents :

The law of 1861 provides for sueing *corporations*. The law of 1862 supplies a defect or omission in the law of 1861, and provides for sueing *companies*. The latter law does not alter, repeal or modify the first. It refers only to companies *not incorporated*.

The service, though not literally a compliance with the law of 1862, is substantially a compliance with that law.

There being a mere technical failure, not affecting the real object to be attained by the service, the error, if any, is cured under the 71st Section of the Practice Act.

Defective service does not deprive the Court of jurisdiction. If defendant fails to appear on a defective service, he waives the defect and cures the error. (*Myers* v. *Overton*, 4 E. D. Smith, 428.)

If the statute of 1862 does not repeal the statute of 1861, two modes of service are allowed, and it does not appear that the defendant is a company coming within the description of those companies mentioned in the Act of 1862.

As to the point made upon the form of the jurat, reference is made to the case of *Muller* v. *Boggs* (April term of California Court, 1865).

Opinion by BEATTY, J., full Bench concurring.

This was an action on account. Judgment was entered by

default.   Defendant, without seeking to set the default aside in the Court below, appeals to this Court.

The questions raised are: Was there such service and such' proof of service as entitled the plaintiffs to have a judgment entered by default?   The service was made by W. S. Wood, by delivering a true copy of the summons to the Secretary of the company, and showing him the original summons.   It is objected that this summons was not properly served, because the original was not read to the Secretary.   The Practice Act of 1861, Section 29, provides that service on a *corporation shall* be by delivering a copy " to the President, or other head of the corporation, Secretary, Cashier or managing agent thereof."   A law of 1862, in regard to the manner of serving and rendering judgments against *companies* of a certain character, contains this clause: " In all suits against any company organized for mining purposes, or against any company transacting business or keeping an office within this Territory, service may be made by reading and delivering a copy of the summons to the President, Secretary, Cashier or managing agent thereof, and in case such service cannot be had, then by publication, as now provided by law."

It will be seen that by this latter Act service *may be made* against companies of a certain description, by serving a copy and reading the original summons to certain officers, etc. This provision refers to companies whether incorporated or not.   The main object of the law would seem to have been to supply a defect in the general law.   That law sufficiently provided for serving corporations, but was defective in providing for serving mining companies, etc., which were not incorporated.   The latter law does not profess to repeal the former law, nor is it in conflict therewith.   It is true the word company is broad enough to include corporations, but this makes no conflict between the laws.   In serving a company not incorporated, it would be proper (we presume requisite) to follow the Act of 1862, and both serve a copy and read the original summons.   In serving a corporation, it would be sufficient to simply serve a copy, as provided in the Act of 1861.   If, in addition to the service of the copy, the original summons was read, it could do no harm.

We have no hesitation in saying the proof of service is good. The only objection to the proof is that the jurat to the affidavit of service is claimed to be defective. The jurat is in this form:

"Subscribed and sworn to before me this 11th day of November, 1864.                    L. HERMANN, Clerk.
          "By B. H. HEREFORD, D. C."

Clerks are, by law, authorized to administer oaths, and by a law of 1864, page 143, they are authorized to appoint deputies, "who shall have power to transact all official business * * * * to the same extent as their principals."

We are bound then to give due faith and credit to all official acts certified either by the Clerk or his deputy.

Interpret this jurat as you will, it shows the oath was made either before Hermann or his deputy. If Hermann administered the oath and his deputy certified to the fact, it was good. If the deputy administered the oath, it was equally good. The jurat conveys one or the other of those ideas. It may be contended that if Hermann administered the oath the deputy could not certify the fact, because of the want of knowledge on his part of what his principal did. It does not follow that because Hermann administered the oath the deputy could not know it was administered. It may have been done in the sight and hearing of the deputy. We are bound to give credence to such certificates, unless there be something on the face of the certificate showing it to be false. We see nothing of the kind in this certificate, and see nothing objectionable in its form.

We must presume the deputy knew the existence of the fact to which he was certifying, and that he certified only what he knew to be true.